Pesante Martínez, Jueza Ponente
*895 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Ángel M. Santiago Rosario en el interés de obtener la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, “TPI”) de 24 de junio de 2004. Mediante la misma, el foro apelado desestimó la acción civil sobre daños y perjuicios instada por el apelante. El TPI fundamentó su dictamen en la aplicación de la doctrina de agotamiento de remedios administrativos. Concluyó el TPI que el apelante tenía que establecer su reclamación ante el foro administrativo correspondiente en la Administración de Corrección.
Por los hechos que esbozamos a continuación y los fundamentos aplicables, confirmamos la sentencia en controversia.
I
El 2 de septiembre de 1969, la parte apelante, Ángel M. Santiago Rosario, fue sentenciado a pena de reclusión por el delito de asesinato en primer grado. El 30 de mayo de 2003, la sentencia de reclusión perpetua se enmendó a una de 99 años.
En el 2002, mientras el apelante disfrutaba del privilegio de libertad condicionada, la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA) sometió a Santiago Rosario a una prueba de dopaje rutinaria y luego de dar positivo a la misma, el referido privilegio le fue revocado por la Junta de Libertad Bajo Palabra (la Junta). En su consecuencia, el apelante fue reingresado a la institución penal Bayamón 501 hasta tanto la Junta reevaluara su caso.
Así las cosas, el 27 de abril de 2004, el apelante presentó ante el TPI una acción sobre daños y perjuicios contra la Administración de Corrección y la Oficina de Récord de Bayamón. Adujo que la razón para presentar la acción fue que le habían alterado los términos de su sentencia, imponiéndole seis años en lugar de los tres años reglamentarios, a ser cumplidos antes de cualificar para la reevaluación aludida. De otra parte, el apelante alegó que se había incluido en sus hojas de liquidación una sentencia que ya había extinguido, afectando así su plan de rehabilitación y su salida a la libre comunidad.
Ante dicho cuadro, Santiago solicitó al TPI que se emitiera una orden dirigida a la Administración de Corrección para que se le corrigiese su hoja de liquidación. Además, solicitó compensación por supuestos daños sufridos como consecuencia de la alegada manipulación de los datos contenidos en la hoja de liquidación de sentencia, cuya cantidad estimada fue de $150,000.
El 24 de junio de 2004, el TPI desestimó la acción sobre daños y perjuicios instada por el apelante, al estimar que dicho foro carecía de jurisdicción para atender los reclamos planteados en la demanda, a tenor con la doctrina de agotamiento de remedios.
*896 Inconforme, la parte apelante acudió oportunamente ante nos mediante el recurso de epígrafe imputando los siguientes siete errores, a saber:

“Erró el [TPI] al desestimar la demanda incoada bajo el caso Civil Núm. DAC2004-1507, bajo el fundamento de que no agotaron los remedios administrativos.

Erró el [TPI] al desestimar la demanda incoada bajo el caso Civil Núm. DAC2004-1507, cuando el peticionario y recurrente cumplió a cabalidad con el cauce administrativo y de autos se desprende que el recurrente agotó la fuente de remedios administrativos con múltiples solicitudes de remedios administrativos que tramitó con la agencia recurrida Adm. de Corrección del E.L.A.

Erró el [TPI] a quo al desestimar el caso Civil Núm. DAC2004-1507, sobre demanda en daños y perjuicios, cuando el Honorable Tribunal Supremo de Puerto Rico se ha pronunciado reiteradamente en que no debe desestimarse una demanda sirí antes dar la oportunidad al demandante de su derecho a ser oído, a presentar prueba y a tener su día en corte.

Erró el [TPI] al desestimar la demanda en daños y perjuicios incoada bajo el caso Civil Núm. DAC2004-1507, cuando la parte demanda (sic) al momento de producirse la desestimación no había sido emplazada ni había entrado en la jurisdicción del [TPI] ni la parte demandada se había sometido a. la jurisdicción del [TPI], ni tampoco se notificó a la parte demandante copia del diligenciamiento del correspondiente emplazamiento, hecho a la parte demandada, lo que constituye una negativa del debido proceso de ley garantizado constitucionalmente. Véase, Artículo II See. 7 Constitución del E.L.A. y EMDA (sic) XIV de la Constitución de los Estados Unidos de. América, (sic)

Erró el [TPI] al desestimar la demanda incoada bajo el caso Civil Núm. DAC2004-1507, sobre daños y perjuicios emitiendo una sentencia errónea ilegal que no es conforme a derecho y que le niega al demandante el debido proceso de ley y la igual protección de la ley. ■<

Erró el [TPI] al desestimar la acción Civil Núm. DAC2004-1507, sobre daños y perjuicios cuando los procedimientos que se siguieron en el [TPI] a quo, no se ajustan a las prescripciones de la ley.

Erró el [TPI] al desestimar la acción civil en daños y perjuicios bajo el fundamento de que no se Cumplió con los agotamiento (sic) de remedios administrativos cuando la parte demandante recurrida no había sido emplazada y traída a la jurisdicción del [TPI], por lo que la sentencia recurrida emitida en [TPI] en el caso Civil Núm. DAC2004-1507 es una errónea, ilegal y anticonstitucional (sic). ”

Analizada la totalidad del expediente, y tras la comparecencia de ambas partes, resolvemos.
II
Por comprender esencialmente el mismo planteamiento redactado en distintas palabras, procederemos a analizar los siete errores planteados en conjunto.
A. Reglamentación de la Administración de Corrección: Derechos y Obligaciones de la Población Correccional
El apelante plantea que la determinación del TPI de desestimar la causa de acción instada por contravenir con los postulados sobre la doctrina de agotamiento de remedios carece de toda validez. .Santiago Rosario insiste que, contrario a lo estimado por el foro apelado, gestionó a cabalidad sus reclamos por la vía administrativa, mas no obtuvo resultados favorables. No le asiste la razón.
*897 La Administración de Corrección fue establecida mediante la Ley Núm. 116 de 22 de julio de 1974, 4 L.P. R.A. sec. 1101 et seq., con el propósito de administrar el sistema de correccional. Artículo 4 de la Ley Núm. 116, supra, 4 L.P.R.A. sec. lili. En virtud de la propia Constitución del Estado Libre Asociado de Puerto Rico, Artículo VI, Sección 19 y la Ley 116, ante, disponen como política pública que las instituciones correccionales tienen un deber ineludible de desarrollar programas y habilitar sus facilidades para que propenda un ánimo de rehabilitación moral y social entre la población de confinados. A tenor con ello, la Administración de Corrección tiene el deber ministerial de prestar ciertos servicios a la población correccional. Artículo 5 de la Ley Núm. 116, supra, 4 L.P.R.A. sec. 1112. En cambio, la población correccional tiene la responsabilidad de conocer, entender y acatar las normas y procedimientos establecidos por la Administración de Corrección de modo que se puedan lograr las metas de rehabilitación y se garantice la seguridad de la población correccional, su personal docente y la comunidad civil en general. Manual de Orientación: Derechos y Obligaciones de la Población Correccional de 23 de abril de 1999.
Cónsono con lo anterior, la Administración de Corrección ha reconocido la importancia de ofrecerle a la población correccional un foro administrativo donde ventilar sus querellas y preocupaciones. Este reconocimiento está contemplado en el referido Manual de Orientación bajo la sección Programa de Remedios Administrativos para los Miembros de la Población Correccional, Tercera Parte. El objetivo de dicho programa es el siguiente:

“La Administración de Corrección reconoce la importancia de ofrecer a la población correccional un mecanismo administrativo ante el cual el miembro de la población correccional pueda presentar cualquier queja o preocupación. Por lo tanto, cada institución correccional tendrá un buzón en donde la población correccional podrá depositar su solicitud de remedio administrativo para ser recogido y procesado por el personal debidamente autorizado; de creerlo conveniente, el miembro de la población correccional podrá entregárselo directamente al personal del Programa. En todo momento, se seguirán las normas y procedimientos del ‘Programa de Remedios Administrativos para la Población Correccional’. ”

Por su parte, el procedimiento administrativo que debe seguir todo confinado para presentar y hacer valer adecuadamente su querella se encuentra contemplado en el Manual de Orientación, supra, cuya Tercera Parte, III. Procedimientos nos dice que:

“El miembro de la población correccional que desee radicar una solicitud de remedio administrativo deberá solicitar el formulario apropiado al Superintendente de la institución correccional en donde se encuentre ubicado o al personal indicado. Toda solicitud debe ser radicada dentro de los quince (15) días laborables contados desde la ocurrencia del incidente que motiva la misma.

El procedimiento de radicación de solicitudes de remedios administrativos, al igual que la radicación de una revisión ante la respuesta de la Oficina de Remedios Administrativos, está reglamentada en el Reglamento del Programa. La Oficina de Remedios Administrativos estará disponible para aclarar cualquier duda sobre los procedimientos, derechos y deberes del solicitante. ” (Enfasis nuestro).
El 2 de mayo de 2002, se aprobó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 6453 (en adelante, el Reglamento). El mismo se aprobó a tenor con lo dispuesto por la Ley Federal conocida como “Civil Rights of Institutionalized Person Act”, de 23 de mayo de 1980. Dicha ley es de aplicación a Puerto Rico y tiene como objetivo principal “que toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar solicitud de remedio, para su atención, con elfin de minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la radicación de pleitos en los Tribunales de Justicia”. Introducción al Reglamento Núm. 6453. (Enfasis suplido.) En virtud de dicha Ley se creó el Programa de Remedios Administrativos para los Miembros *898 de la Población Correccional.
El Programa de Remedios Administrativos dispone de un proceso interno para ventilar las quejas y solicitudes de los confinados. En síntesis, el proceso consiste en que una vez ocurre un incidente del cual el confinado hace y somete una solicitud por escrito, un evaluador la investiga y emite una respuesta dentro del término de 15 días laborables. Si el evaluador necesitara información adicional para contestar la solicitud, éste contestará y remitirá la misma dentro del término de 15 días laborables a partir de recibir la información adicional. En caso de que el confinado no esté conforme con la respuesta emitida por el evaluador, podrá apelar de la misma ante el Coordinador Regional, dentro1 de un término de 15 días laborables desde que recibió la notificación. El Coordinador Regional tendrá 30 días laborables para emitir su determinación, salvo que medie justa causa para la demora. El Reglamento también provee para la celebración de una vista administrativa dentro de los 20 días desde que se presente el escrito de revisión. De no estar conforme con la decisión del Coordinador Regional, el confinado puede presentar una solicitud de reconsideración. A su vez, el Reglamento permite una apelación ante el Director del Programa de Remedios Administrativos en caso de que el confinado no estuviere de acuerdo con la determinación tomada en reconsideración por el Coordinador Regional. El Reglamento dispone, además, que una vez agotados los trámites antes mencionados, el miembro de la población correccional que esté inconforme con la resolución emitida por el Director del Programa podrá solicitar una revisión judicial ante el Tribunal de Apelaciones, dentro de los 30 días siguientes a la notificación de la misma.
B. La Abstención Judicial: Doctrinas de jurisdicción primaria, exclusiva, concurrente y el agotamiento de remedios administrativos
En su escrito, la parte peticionaria sostiene que incidió el TPI al desestimar su causa de acción, por entender dicho foro que era aplicable la doctrina de agotamiento de remedios administrativos.
Las doctrinas de jurisdicción primaria y jurisdicción exclusiva han surgido como respuesta a la necesidad de establecer claros linderos entre los ámbitos de acción judicial y administrativo, respecto a tales poderes cuasi-legislativos y cuasi-judiciales.
La doctrina de jurisdicción primaria, de génesis jurisprudencial, establece un sistema de prelación jurisdiccional mediante el cual se determina si será la agencia administrativa o el tribunal, quien atenderá inicialmente una reclamación. Aguilú Delgado v. P.R. Parking System, 122 D.P.R. 261, 266 (1988); E.L.A. v. 12,974.78 metros cuadrados, 90 D.P.R. 506, 511 (1964).
La doctrina de jurisdicción primaria consiste de dos (2) vertientes, a saber, la jurisdicción primaria exclusiva y la jurisdicción primaria concurrente. Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257 (1996), (Citas omitidas).
La jurisdicción primaria exclusiva se conforma cuando la ley dispone expresamente que el organismo administrativo tendrá jurisdicción inicial exclusiva para atender la reclamación. Es por tal razón, que esta vertiente se ha denominado como jurisdicción estatutaria, ya que es la propia ley quien aclara que no existe jurisdicción concurrente. Rivera Ortiz v. Mun. de Guaynabo, supra, a la pág. 268. En tales casos, no estamos ante una doctrina jurisprudencial, sino ante un mandato legislativo. íd.
Cabe señalar que la jurisdicción primaria exclusiva puede ser tanto original como apelativa. Esto es, el legislador puede designar la exclusividad del foro, tanto en la etapa inicial de una reclamación, así como para conferirle a una agencia jurisdicción exclusiva para atender, en primer lugar, la apelación de una decisión administrativa. íd.
Por otra parte, la jurisdicción concurrente se da cuando la ley permite que la reclamación se inicie, bien en *899 el foro administrativo como en el judicial. íd., a la pág. 267; Aguilú Delgado v. P.R. Parking System, supra. La particularidad de esta vertiente es, que es en ésta, que se configura la verdadera jurisdicción primaria. Rivera Ortiz v. Mun. de Guaynabo, supra; Ferrer v. Figueroa, 109 D.P.R. 398 (1980). Ello se debe a que, teniendo ambos foros el derecho de atender una reclamación, el foro judicial se abstiene para permitir al organismo, enjuiciar una materia de su competencia, bajo el supuesto de que éste posee unas destrezas y conocimientos especializados o expertise. Delgado v. Nazario Ferrer, 121 D.P.R. 347, 354 (1988). Como bien se ha señalado, el propósito de esta vertiente es ceder la primacía al organismo administrativo. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, San Juan, Editorial Forum, 1993, a la pág. 440. Al amparo de este fundamento, el Tribunal Supremo de Puerto Rico ha razonado que “permitirle a cada agencia resolver inicialmente las controversias a base de su conocimiento especializado promueve no sólo la uniformidad adjudicativa, sino que reduce considerablemente las posibilidades de conflicto. Si el Poder Judicial entrara festinadamente a examinar cuestiones de política pública —no resueltas a nivel administrativo-careceríamos del beneficio de esas interpretaciones y se incrementarían las probabilidades de decisiones incompatibles. ” Delgado v. Nazario Ferrer, supra.
Otra de las doctrinas de abstención judicial en este campo del Derecho, es la doctrina de agotamiento de remedios administrativos. Aunque parecidas, esta doctrina no debe confundirse con la doctrina de jurisdicción primaria. E.L.A. v. 12,974.78 metros cuadrados, supra, a la pág. 513. La distinción entre ambas figuras estriba en que la doctrina de jurisdicción primaria, determina qué organismo debe hacer la determinación inicial de atender la reclamación. En tanto que la doctrina de agotamiento de remedios determina cuándo es el momento apropiado para que los tribunales intervengan con una controversia que haya sido previamente sometida a la atención de una agencia administrativa. Guzmán y otros v. E.L.A., opinión de 7 de mayo de 2002, 156 D.P.R. _ (2002), 2002 J.T.S. 65; Municipio v. AT & T Wireless PCS, Inc., opinión de 18 de junio de 2001, 154 D.P.R. _ (2001), 2001 J.T.S. 96; Vélez v. Romero Barceló, 112 D.P.R. 716 (1982). Por tanto, ha señalado el Tribunal Supremo que:

“De conformidad con ello, ésta (la doctrina de agotamiento de remedios) aplica en casos en los cuales, una parte que instó o tiene pendiente alguna acción ante la consideración de una agencia o ente administrativo, recurre al foro judicial sin antes haber completado todo el trámite administrativo disponible. (Citas omitidas). Lo que implica, pues, que al amparo de la misma, se tienda a cuestionar la procedencia de una acción judicial instada por una parte que acudió en primera instancia a un organismo administrativo, y que luego, sin antes esperar a que finalicen tales trámites o a que se le concedan los remedios administrativos correspondientes, se desvía de tal cauce recurriendo, al mismo tiempo, ante el tribunal, en busca de aquel remedio que dejó pendiente de adjudicación ante la agencia pertinente. ”

Guzmán Cotto v. E.L.A, supra, a la pág. 1062.
Esta doctrina, pues, presupone la existencia de un procedimiento administrativo que comenzó, pero que no culminó, porque la parte concernida recurrió al foro judicial antes de que se terminase el procedimiento administrativo referido. A tono con estos objetivos, la doctrina de agotamiento de remedios está predicada en la máxima de que “nadie tiene derecho a auxilio judicial por un daño supuesto o inminente hasta haber agotado el remedio administrativo prescrito.” Mercado Vega v. U.P.R., 128 D.P.R. 273, 282-283 (1991).
Por otro lado, es necesario apuntar que la aplicación de esta doctrina estará condicionada a que la parte peticionaria ante el foro judicial, sea la misma que participó en el procedimiento administrativo, pero que no agotó la fase de éste que aún estaba pendiente. Municipio v. AT & T Wireless PCS, Inc., supra. Valga señalar que esta doctrina ha sido acogida por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la “Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico”, en su See. 4.3.
*900 Puede concluirse, pues, que de esta manera se evita “una intervención judicial innecesaria y a destiempo que tiendja] a interferir con el cauce y desenlace normal del procedimiento administrativo”. Oficina de la Procuradora del Paciente v. Aseguradora MCS, opinión de 22 de septiembre de 2004, 162 D.P.R. _ (2004), 2004 J.T.S. 160; Delgado Rodríguez v. Nazario, supra, a las págs. 354-355; Mercado Vega v. U.P.R., supra.
Otro de los factores a considerar al palio de esta doctrina será si, a la luz de las circunstancias del caso y pericia de la agencia, la intervención judicial será prematura. Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993); Vélez v. Romero Barceló, 112 D.P.R. 716 (1982). Observados estos criterios, se reiteró la importancia de la posposición de la intervención judicial y al dilatar la etapa en que el litigante puede recurrir al tribunal se logra:

“(1) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; (2) que la agencia pueda utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. Al mismo tiempo, el Poder Judicial conserva la autoridad para intervenir en los momentos en que sea necesario para evitar un daño irreparable a una persona, facilitándose entonces la revisión judicial al tener los tribunales información más precisa sobre los fundamentos de la actuación gubernamental. ”

Oficina de la Procuradora del Paciente v. Aseguradora MCS, supra. (Citas omitidas.)
A tenor de lo anterior, se ha puntualizado que la doctrina de agotamiento de remedios no debe soslayarse a menos que se configuren algunas de las limitadas excepciones contempladas por nuestro ordenamiento. Guzmán Cotto v. E.L.A, supra. Entre los factores que favorecen la preterición del requisito de agotamiento son: “i) que el dar curso a la acción administrativa haya de causar un daño inminente, material, sustancial y no teórico o especulativo, ii) que el remedio administrativo constituya una géstión inútil, inefectiva y que no ofrece un remedio adecuado, Vda. De Iturregui v. E.L.A., 99 D.P.R. 488, 491 (1970), (iii) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o iv) el asunto es estrictamente de derecho. ” Oficina de la Procuradora del Paciente v. Aseguradora MCS, supra. (Citas omitidas).
Es importante indicar, que en los casos en que se alegue que los remedios administrativos sean lentos, el perjudicado deberá justificar la preterición. A tales efectos, deberá señalar hechos específicos y bien definidos, y los exponga de manera tal que le permita al tribunal evaluar la defensa del Estado. Oficina de la Procuradora del Paciente v. Aseguradora MCS, supra; Guadalupe v. Saldaña, Pres. U.P.R., supra, a la pág. 50; Rivera v. E.L.A., 140 D.P.R. 538, 542 (1996). Este criterio es observado también en los casos en los que se invoca como excepción la violación sustancial de derechos constitucionales.
A la luz de lo anterior, si bien es reconocido que es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo. Oficina de la Procuradora del Paciente v. Aseguradora MCS, supra; Guadalupe v. Saldaña, Pres. U.P.R., supra; First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426 (1983). A tales fines será necesario demostrar “la existencia de un agravio de patente intensidad que justifique desviarse del mencionado cauce. ” Oficina de la Procuradora del Paciente v. Aseguradora MCS, supra; Guadalupe v. Saldaña, Pres. U.P.R., supra.
Ill
Dentro del marco jurídico y doctrinal antes expuesto, procedemos a resolver. La controversia ante nos se circunscribe en determinar si la parte apelante debió agotar el cauce administrativo previo recurrir al foro judicial. Somos de opinión que le corresponde a la Administración de Corrección, de manera primaria, ventilar *901 la controversia planteada por la parte apelante. Veamos.
Surge de los documentos que obran en autos que el apelante reclama que sufrió daños como resultado de las actuaciones negligentes de la Administración de Corrección y los técnicos de la Oficina de Récord de la Institución Penal de Bayamón 501. La negligencia consistió en alegadamente alterar información en las hojas de liquidación de sentencia del apelante, afectando así su plan institucional de rehabilitación y salida, toda vez que el alegado error le impuso una cantidad mayor de años a cumplir antes de que la Junta de Libertad Bajo Palabra volviera a evaluar su caso, contrario lo dispuesto en el Reglamento de la Junta. Sin embargo, entendemos que las alegaciones del apelante se alejan de un reclamo sobre daños y perjuicios y se acercan más a un cuestionamiento sobre actuaciones del personal de Corrección reflejadas en las hojas de liquidación de sentencia.
A tenor con los reglamentos antes citados, en específico el Reglamento Núm. 6453, supra, el reclamo del apelante está contemplado como un asunto que debe ser presentado ante la Oficina de Remedios Administrativos de la Administración de Corrección. Los cálculos matemáticos que se alegan como incorrectos, contenidos en la hoja de liquidación de sentencia, constituyen una situación que “afecta personalmente al confinado en su plan institucional”.
De ese modo, el apelante tenía un deber de acudir, en primera instancia, a la Oficina de Remedios Administrativos para dilucidar su reclamación. Por su parte, Santiago Rosario alegó que recurrió al foro administrativo y que, como cuestión de hecho, agotó el remedio sugerido. No le asiste a la razón.
De la documentación evaluada por este Tribunal, quedó acreditado que Santiago, en efecto, presentó una Solicitud de Remedios. No obstante, el contenido de la misma no alude a las supuestas alteraciones en las hojas de liquidación, sino que se circunscribe a notificar que sus gestiones para lograr que se le entregasen sus hojas de liquidación resultaron infructuosas, por lo que solicitó que las mismas le fueran entregadas de manera inmediata.
De otra parte, según se desprende de los Formularios de Requerimiento de Servicio, Santiago Rosario se circunscribió exclusivamente a solicitar que se le entregara la nueva hoja de liquidación de sentencia y bonificaciones y no mencionó nada sobre demás irregularidades, pudiendo haberlo hecho estando, pues, ante el foro adecuado para ello. De la documentación suministrada no surge prueba que nos lleve a entretener la idea de que, siguiendo el aludido cauce administrativo, haya cuestionado las alegadas alteraciones a su hoja de liquidación de sentencia. Por el contrario, sus gestiones ante la agencia se limitan a solicitar la entrega de la hoja de liquidación que le corresponde y que, a pesar de sus múltiples gestiones las cuales, para ese propósito, sí reconocemos, aún no ha logrado que le hagan entrega de las mismas.
La pretensión del apelante según esbozada en su petitorio no obliga a este Tribunal a suscribir la teoría de que agotó el cauce administrativo. Más aún, surge meridianamente claro del recurso y su apéndice que el apelante no llevó ante el foro administrativo la reclamación en la cual basó su acción sobre daños y perjuicios y el recurso que hoy nos ocupa.
Colegimos de lo anterior que nunca estuvo planteado ante la Oficina de Remedios Administrativos las posibles alteraciones en los cómputos reflejados en la hoja de liquidación de sentencia, situación contemplada bajo la jurisdicción primaria exclusiva del Programa de Remedios Administrativos. El apelante venía obligado inicialmente a presentar su reclamación ante el foro administrativo e incidió al no hacerlo. Compartimos el sentir de que la autonomía administrativa es deseable, sobretodo en los casos en que se requiere discreción o especialidad administrativa. Febres v. Feijoó, 106 D.P.R. 676 (1978). Permitir a cada agencia resolver inicialmente las controversias a base de su conocimiento especializado promueve no sólo la uniformidad adjudicativa, sino que reduce considerablemente las posibilidades de conflicto. Delgado Rodríguez v. Nazario *902 de Ferrer, supra.
Habida cuenta de lo anterior, procedía la desestimación de la acción sobre daños y perjuicios presentada por el apelante de epígrafe. Santiago Rosario venía obligado a llevar sus reclamos ante el foro administrativo determinado para ello y bajo los procedimientos reglamentarios esbozados para ello, por lo que no se cometió ninguno de los siete errores imputados. 
No empece lo anterior, resulta ineludible hacer la siguiente observación y advertencia. A la luz de los múltiples reclamos infructuosos efectuados por el apelante para que la Administración de Corrección le haga entrega de las hojas de liquidación, resaltamos lo siguiente.
De la propia Introducción del Manual de Orientación, supra, sobre los derechos y obligaciones de la población correccional, se desprende que para poder dar paso a la meta de rehabilitación social y moral que se supone more entre las labores del personal de Corrección, existe un deber ministerial de prestar servicios a la población correccional. En cambio, continúa elaborando la referida Introducción, los confinados tienen que seguir las normas y procedimientos establecidos por la Administración de Corrección "para lograr las metas de rehabilitación y garantizar la seguridad de la población correccional, el personal y la libre comunidad. ” Manual de Orientación, supra, alapág. 1.
Según el antes citado Manual exhorta de manera introductoria a la comunidad de confinados a leer y seguir el mismo, a modo de “hacer de [la] estadía institucional una provechosa y positiva experiencia, la cual redunde en rehabilitación”, hemos de compeler a la Administración de Corrección a adherirse a las normas que promulgan e instituyen.
Por ende, recordamos a la Administración que tiene el ineludible deber de atender oportunamente los reclamos que a bien hace la comunidad correccional, y que se apartan de toda doctrina jurídica, como en el caso de autos, la sencilla labor de facilitarle al confinado apelante unas hojas de liquidación de sentencia. No hay duda que la labor compartida propenderá favorablemente a lograr el cumplimiento propicio de las metas de referencia.
IV
Por los fundamentos que anteceden, se confirma la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2005 DTA 27
1. Valga aclarar que dicha omisión no es óbice para que, en su día, los tribunales tengan oportunidad de revisar la actuación administrativa, de así entenderlo necesario.